The police court, my name is Paul Couchot of Winthrop Couchot, I've been lead counsel, lead insolvency counsel for what we refer to as the voluntary SunCal debtors since November 2008. I've been involved basically in all these proceedings and what I'd like to just really point out here today is that this is really an issue of fundamental fairness in my opinion where a secure creditor that is a debtor in another bankruptcy that files a proof of claim in the SunCal bankruptcy is essentially seeking immunity from not only the attack on its claim on equitable subordination but really even treatment under a plan by using its automatic stay as a sword instead of a shield. Well, you're not in front of the jury counsel and you're not in front of the bankruptcy court. You're in front of a court that is now talking not about equitable equities and all that kind of stuff which your first statement starts out with but we're talking about law here. And we're talking about whether your client needs to go to another bankruptcy where they are the debtor to seek the relief that you want or whether they have to come to you. Yes, your honor. That's what we're really talking about. Okay, and my point is that we've moved for relief from stay twice in New York and been denied twice. Well, if you've been denied then it seems to me you appeal in New York. We took it all the way up to the Second Circuit and the Second Circuit deferred to the Ninth Circuit. Correct. Saying we could decide whether you could go forward out here. That's right, your honor. Exactly. Perfect agreement on that. I would like to clear up one factual matter which really made the question of whether there is a standing. Did the Ritter Ranch Revolver loan get sold? The Ritter Ranch Revolver loan along with the, I believe, SCC Communities loan were repoed pre-petitioned to an entity called Fenway and later about a year ago, maybe a year ago, were resold to Lehman Commercial Paper through the New York Bankruptcy Court along with five or six other loans that before that were not even owned by a Lehman entity that was a debtor. What evidence do I have in this record that the revolving loan was ever sold? I believe you have the court's order. The court, I'm reviewing that order. So the court's order doesn't make any difference. The BAP says the court's order is wrong. So what evidence do I have in this record to suggest that the revolving loan was ever sold? Your honor, I couldn't point to that right now. Well, I couldn't find it either. And I find all kinds of stuff that suggest it wasn't sold. We looked carefully and we have the same view as Judge Smith. I mean, that's why I think Judge Fletcher's question is very important because as to standing, if I have no evidence that the revolving loan was sold, then I've got to give him standing. And I'm looking all over to find it. Never anything but the term loan was ever mentioned in the sale. Confirmation confirms the term loan. Confirmation confirms the amount. The MRA did not specifically identify loans that were transferred. The bankruptcy court, in my mind, is unclear what it said. You said it said something, but I don't know what it said. We're still waiting for it to say something. Quite frankly, the issue is that the revolver loan was not brought up until after the court had ruled. Well, and then they asked for a motion for clarification, and I don't even have anything suggest it was ever clarified. It was never clarified, and I don't think that the court even has jurisdiction to do so, given the fact that this was already on appeal. Well, I guess if the bankruptcy court found that Lehman transferred the revolver loan based on this record, I can't find anything, but that was erroneous. I understand what you're saying, Your Honor. And therefore, we have standing. I'm ready to move on, if I may. Okay, so we'll move on. And where are we going? Then it can't be moot. I'm ready to argue the substance of the matter. All right, let's go to the substance. You asked about the law, and I would point out that there's a case called Parker North American that one of the panel members were involved with, and there is a similar issue here where the court unanimously decided that if the bankruptcy court isn't allowed to basically exercise its exclusive powers to adjudicate claims and administrate claims in its bankruptcy case, the system's going to fall apart. And that's exactly what's really happened here. Because we have not been able to administer those claims, the cases have been stalled. Well, let me ask you this question. I look very carefully, and I was a creditor's lawyer, really, in the bankruptcy. That's not good news. And I also, I want to put that right up front, and I also was a debtor's lawyer for representing farmers in bankruptcy. So I had both. I had both. Do you want a song to reveal what we did in the bankruptcy? Well, I'm just trying to lay it out because... Give them a message, Mr. Kennedy. Frankly, if you want to do that, Judge Fletcher, I'll give you adequate time. There is a rule which says the action would give control of the debtor's, of the defendant's property, or an action which would give control of property, would necessarily have to go to that bankruptcy. I disagree respectfully with that. All right. Tell me why. Because they filed a proof of claim, and they submitted it to the jurisdiction of the California Bankruptcy Court, who has exclusive jurisdiction over the property of the estate and the claims against the estate. So having filed that proof of claim, and having this matter, the equitable subordination matter, do no more than limit its relief to the claim itself, you have an NRAM action dealing with a race. It's not a claim against the creditor, and she has exclusive jurisdiction. And what you really have here is, for example, under the Merrick cases, if they had, someone had objected to a secured claim, you'd have the same type of issue, but there's no carve-out in the Merrick line of cases for an objection to a secured claim. There's simply no difference. The lien is incident to the debt. If there's a problem with the debt, then the lien falls. For example, several cases, 506D of the Bankruptcy Code, the lien is void to the extent that there is no value. Well, counsel, there was never any contest for the validity of the claim. The only thing is, I understand that they wanted to subordinate it to become an unsecured claim rather than a secured one. And that affects the property of the debtor, which would require you to get permission to affect that property in New York, as I understand. There was never any concession, in fact, as to the validity of the claim. Well, doesn't that, that's enough of it. If they had contested the claim's validity, they can litigate that in California, but they can't reduce the value of it, having admitted the validity of it, isn't that right? They have to go back to New York and get permission to affect that property. There is no admission as to the validity whatsoever. The term loan was never contested on its validity. Well, they just want, wouldn't they just want to equitably subordinate it? We've never seen proof of the term loan. We have not, as of right now, we have claim objections for recoupment pending in the Bankruptcy Court that are also being, we have a hearing next week. They're also taking the position that that violates the automatic stay. And there's been no concession whatsoever that any of these claims are anything but disputed. Now, I think what 510C says is that it can be a loud claim and you can still equitably subordinate it. It doesn't, it doesn't mean it has to be an allowed claim. And we are not done with the claims in this administration process. And because of the way they use their stay as a sword, every time we try to take an action to do so, we find ourselves in New York. Well, I thought that was because. Even on cases that fit right within American Way and, you know, the Second Circuit cases as well. I understand your argument. Can you answer this question to me? Why is not an equitable subordination action seeking to obtain possession of property of the estate and exercise control over it, affirmative relief? Because it's no different than objecting to a secure claim under 502B. If there's a problem with the debt, whether it's because of inequitable conduct, the lien needs to be subordinated to the extent that the debt is. It's just a corresponding feature of that. You don't recognize the difference between denying the claim outright as opposed to not denying a claim outright, but changing the nature of the claim from a secured claim to an unsecured claim. In other words, equitably subordinating the claim. You don't recognize the difference between those two things. As a practical matter, if I objected to a secured claim under 502B or just any claim, well, a secured claim, then the lien under the 502 section would also be reduced by the amount that the claim may have been, say, partially reduced. But not if you don't object to the claim itself. My understanding is you're not objecting to the claim that was made by Lehman as terms of the loan. You were just trying to subordinate the loan to be an unsecured loan. That's equitable subordination, isn't it? Equitable subordination is done on a claim-by-claim basis, and it's not a whole-scale transfer of the lien. The lien is only essentially, if you read the cases, the lien is only basically subordinated to the extent that the judge finds that creditors have been damaged by the inequitable conduct. So it's not a whole-scale transfer. I know what the code says, but that's not how it works, and that's not how the cases read. It really works the exact same way as a 502d objection to a secured claim, in that it's basically, under 502, it goes away to the extent that the claim's been reduced, not in its entirety, just to that extent. And the same thing with equitable subordination. If we're asking for $100 million of unsecured creditors to be paid from equitable subordination, and the judge agrees with that, then only, the lien will only be subordinated to the extent of that $100 million, and it would have to be proven the same way you would have to prove the unenforceability of a claim under 502. Do you want to save some time? Yes. Thank you. Good morning, Your Honors. Chris Pace for what I would refer to as LCPI. That's Lehman Commercial Paper, Inc. The Bankruptcy Appellate Panel here carefully applied and followed not only the precedent of the Bankruptcy Appellate Panel, but the precedent of this Court, and in fact, the position that is being advocated by the appellants would indeed conflict with this Court's precedent, which obviously this Court must follow, as well as with that precedent. Let me start with In re Miller, which very clearly states that an adversarial proceeding has to be brought in the home bankruptcy court. In fact, in In re Miller, the circumstances are the party is defending against the claim. After they prevail, they want to get attorney's fees. Even in that, the Ninth Circuit said, you want attorney's fees, you have to go to the other bankruptcy, because it's an adversarial proceeding, it can only be brought in the home bankruptcy court. Under the standard that's being argued here by appellants, they would also be able, for example, not only with equitable subordination, but as long as they're not seeking affirmative relief from LCPI, from Lehman, they could bring up any defense, any attack, for example, set-off, even though this Court has held in Newberry v. Fireman Fund back in 1996, that set-off is barred by the automatic stay. So, you know, again, let's remember these circumstances. My client lent over half a billion dollars to his clients. They did not repay that. There's almost no argument they can raise that would get to the affirmative relief under the way that they're defining it, because they're saying, unless we're actually getting a big chunk of money out of LCPI, then we're allowed to go free and do whatever we want. So they essentially say, we've got room for over half a billion dollars worth of impact before we ever have to go to the bankruptcy court in New York. A couple other matters to bring up. Also, Inmate Broaders from this Court holds that a lien on a secured claim passes through bankruptcy unless it's affirmatively affected by the bankruptcy. So when they talk about taking the lien of LCPI, that is something that actually would have passed through the bankruptcy. A secured creditor, for example, can ignore bankruptcy. It's a risk, but they can ignore bankruptcy and rely on their liens. Those liens will pass through unaffected. So they're affirmatively taking the LCPI property when it relates to these liens. A couple of extra points. I want to be clear on the relief from stay that they sought in the New York Bankruptcy Court. The first time they went to seek relief from stay, they asked for a blanket relief. The Bankruptcy Appellate Panel recognizes this, and Judge Peck in the Southern District of New York Bankruptcy Court said, I'm not giving you a blank check. If you've got something specific, come back to me. They did not. They proceeded in the California court. The most recent time they went back was after they lost the Bankruptcy Appellate Panel, after they had appealed to this court, and then they went back and they tried to ask for relief from stay in that context, and the judge said, well, one, you waited a long time to get here, and two, given the procedural morass that's in existence, let's come back to me at a later time. I may reconsider, but right now, I don't think you need it. And that was appealed to the District Court and affirmed and appealed to the Second Circuit and affirmed. Whereupon the Ninth, whereupon the Second Circuit said, we'll wait for the Ninth. We'll see what the Ninth does, and the Bankruptcy Court can then reassess if this court affirms the Bankruptcy Appellate Panel, they can then again go back to Judge Peck in that posture and say, Judge Peck, we'd like to seek relief. I want to address, if I can, for a second, Judge Fletcher's question, because some of these things developed after the briefs were filed, but it is now in the record with the supplemental filing. All of the loans are now in the possession of Neiman Commercial Paper, LCPI. So there's no dispute, and that's what I believe my learned colleague was referring to when he said that they'd come back. So as the Bankruptcy Appellate Panel refers to a repurchase option under the agreements, they have all been repurchased, all retransferred to LCPI. That was approved by the Bankruptcy Court in New York with the support of the Creditors Committee in New York. That was affirmed by the District Court in New York and then affirmed by the Second Circuit in New York. That's a transaction that went all the way through. So I don't think there's any, and I believe that's why my opponent is not pushing that argument even though it's prominent in the briefs, is I think that those arguments on standing and mootness are really by the wayside. What the Bankruptcy Appellate Panel jurisdiction reflects, so this is no longer the law of the Ninth Circuit, certainly not controlling on this panel, is that, and this is In re Wheatfield Business Park, is that a party can defend against a claim, this is not a valid claim either in terms of its existence or its amount, without violating the automatic stay. Anything beyond that does violate the automatic stay. So and the rationale is, you know, if I'm just trying to prove that you don't even have a claim, I come in and I file a claim against, in a proceeding against Mr. Cusheau for $100 and he wants to prove you never gave me $100, I don't owe you $100, I don't have a claim even in existence then. Even if he wants to challenge it was really $50 that you gave me, okay, that's the amount of it. But if you go beyond that and say the contest is not as to the validity, do you actually have the claim or cause of action, it's how do we affect that cause of action. That is where you run into interference with the automatic stay. Of course, even this Court's precedence, which is Smith v. Arthur Anderson, does establish that a cause of action is in fact property of an estate. So while I understand Mr. Cusheau's point that his clients have not conceded the validity, the fact of the matter is in the equitable subordination context, you're not challenging that validity. You're trying to say valid or not or even valid, we're going to change your priority. We're going to change the benefits that you get for that cause of action. That is what triggers the automatic stay because now you're taking control over that property, which is that cause of action. And the Wheatfield Business Park, when you look at that, because it does involve a dueling bankruptcy, again goes to a validity question because it was an untimely filed claim. Same would apply with the statute of limitations. Whether it's a procedural or substantive, it goes to do you even have the existence of a claim in the first instance, the existence of a cause of action. Mr. Cusheau jumps from there to I believe a 502D reference. That of course would be a very different situation. That is you've got a valid claim but for some prophylactic reason we're not going to let you enforce it until you do something else, turn over property. That would be a different circumstance. Recoupment is a transaction where I loan somebody a million dollars and in that same document I agree to lease one of the floors of their building for $100,000. At the end of the day I file my claim for a million and the recoupment is you only get $900,000 because you never paid your rent. Set off, for example, is I loan someone a million dollars. Later on I have discussions with them, that's one document, later on I have discussions with them about maybe entering some new kind of transaction that's going to resolve the issues. That's separate. Those cannot be joined. Those are in the context of a set off. So it doesn't, because it doesn't challenge the liability or the amount of the liability of the million dollars. It's trying to say there's some other reason I don't have to pay that back. Those are the things that have to be resolved, you know, through the bankruptcy or with respect to the automatic stay. A few additional points that I would like to discuss in this context. One is there's a clear option here that has been provided to the debtors. We've talked about it. They can go and seek relief from stay from the Southern District of New York Bankruptcy Court. They could also bring their adversarial proceeding, as the BAP noted, in the Southern District of New York Bankruptcy Court. So there's no immunity that exists for LCPI. And as I said before, to the extent there is an immunity in the sense that their automatic stay applies to the Suncow Bankruptcy, well, that's this Court's holding in In re Miller. The In re Miller says the automatic stay applies to government units, including other bankruptcy courts. So that exists by the law of this circuit and is not really here to be contested. It was also the law, actually, in the bankruptcy appellate panel under In re North Coast Village for years prior, but it's become the law of this circuit. Equitable subordination has been recognized. We can get into possibly some line drawing in terms of different objections. Equitable subordination has been clearly recognized by the precedent as different than a claim objection. There's no dispute. It's not contesting the validity. In fact, if you can show that a claim, a debt is invalid, you don't need to even equitably subordinate it. It certainly makes no sense. If I don't have a claim, you don't put me further down the line. I'm already at the end of the line. You're off the line. Yes. Did you have a question, Judge Fletcher? I do not. Oh, okay. My additional points is two additional points. One is particularly in connection with equitable subordination. This issue makes sense in terms of the application of the automatic stay. That is certainly not a contesting of the validity because, remember, in this context, it's really a shuffling of the priority as between the different creditors. The debtor, in this sense, is really bringing it on behalf of the creditors of the other creditors. And so it's simply shifting the priority. So, in fact, you're actually altering or trying to alter the rights of an LCPI, for example, not only vis-a-vis the debtor who wants to get the liens, but also vis-a-vis all these other creditors. And, of course, there's an interest in the LCPI creditors of saying, we should have an involvement with that. You should have to come to our court to make sure that that's properly approved. I just want to see if there's any other issues. I'll just briefly touch on and then sit down if the court has no further questions. There are a couple of cases that are cited in the briefs that are outside of the circuit  One is in In Re Medium. The bankruptcy panel addressed that. It certainly has no analysis of when it allows an equitable subordination proceeding to go forward. It would violate this court's ruling in In Re Miller because it would allow an adversarial proceeding outside of the debtor's bankruptcy court, which would not be allowed. It also didn't involve a secured claim, which has our issue of the lien, and that, in fact, also being property of the estate. Also, there's some several references to the In Re PRS Insurance Group. It's a District of Delaware case. I just want to be clear on that case. That does not involve competing automatic stays. The issue before the bankruptcy court there was the application of McCarran-Ferguson because there was an Ohio stay arising from an insurance proceeding. So it's not addressing the issues here. They make it sound like it deals with automatic stay. They do acknowledge in a footnote that it doesn't deal directly with the automatic stay, but they say it's an analogous circumstance. It's not. A federal bankruptcy court doesn't have to follow a state order or a state provision that says they should wait in line or they should delay something. That's very different than the automatic stay context when you truly have the competing bankruptcy courts. At the end of the day, these bankruptcy courts are going to be able to coordinate with each other and work issues out, but that is required through this process. When you have competing bankruptcies, there are challenges that are presented to the federal judiciary. They will certainly be able to handle those challenges with a clear ruling out of this court today. If no further questions, I thank the court for the time today. Anything further, Judge Fletcher? No. All right. Come right forward. I want to give you the chance to respond because I was trying to make sure that he was to the best of what he's put in his brief, and I'm going to give you now the chance to respond to him. Absolutely. We'll do that, Your Honor. Thank you. The first thing that Mr. Pace mentioned was that the BAP opinion that we're appealing from today is consistent with the rest of the law in the Ninth Circuit, but it's not. It is absolutely inconsistent, in my view, with the way Merrick cases, and it's going to basically cause, and it has caused, the exact problems that we talked about. They warned that one litigant should not be free to litigate, and they're litigating against us on claims, and they're litigating against the debtors on competing plans, while the other litigants' hands are tied with the unnecessary impediment of having to get relief from state when they file a proof of claim and submit it to the court's jurisdiction. I'm not sure about the relevance of set-off. It's an affirmative defense. No one's argued it really in the briefs one way or the other. The Broders case, talking about liens passing through bankruptcy, that's when you don't file a proof of claim, so that doesn't have any relevance here because our argument is jurisdictional, jurisdictional in the sense that you've submitted by filing your claim to having this bankruptcy judge determine the allowability and priority, which is prominently mentioned in the Parker North American case, that the priority issue is just as important as the allowability, and that's what you really have with equitable subordination. There really is no distinction. As far as why we didn't proceed in New York earlier, it's because Judge Smith determined that they didn't own the loans, and we dismissed LCPI from the adversary proceeding, and we're going forward with Fenway, which did own the loans. There was no reason until Fenway and LCPI filed the motion to approve the compromise transaction in New York, and we did a limited objection and just said, look, we're proceeding with our litigation here. We would like equitable relief from the stay so that we don't want to stop this transaction if that's what they want to do, even though it's not basically an unwinding of the repos. It's a completely different transaction. As far as filing in the home court in the Ninth Circuit, these cases say that you won't violate the stay if you file in the home court. They don't say that you have to file your adversary proceeding in the home court. They say that if you do, the stay is not violated, so I think that's a mischaracterization. What's your best case on that? The one he mentions is Coast. Well, Coast. But I don't know that Coast. Okay. My reading of Coast is that... I'll read Coast again. Okay. Because I read it as he has suggested. That's all right. The other thing, Your Honor, is filing an adversary proceeding for equitable subordination in New York is unworkable in the sense that we're not the debtor in New York. We don't have the available – there's no procedure where we would have the available remedies in New York to basically file that adversary. I mean, our ability to equitably subordinate in our standing just emanates from the California Bankruptcy Court, not the New York Bankruptcy Court. I think that's an unworkable situation. And it just is not – one last thing about the 502D. He said that, well, 502D is different because it says you got an allowed claim, but because you didn't do this, you know, until you do – you know, return the avoidable transfer, then you're not going to be able to get a distribution. That's very analogous to 510C, equitable subordination. We're basically saying you're in an equitable conduct or fraudulent conduct, has caused harm to these creditors, and until you make good by those creditors, then – but you're not going to get a distribution on your allowed claim. It's the exact same thing. There's no policy difference on that whatsoever. And there are a ton of cases that we've cited that says 502D does not violate the automatic stay. And that's completely analogous with 510C in that regard, where you predicate, you know, the return of a preference or you predicate make and might by creditors that you've induced and relied upon you on promises of payment before you have an allowed claim. And I don't see any difference, and I disagree that there's any type of case law in the Ninth Circuit, other than the case appealed from, that suggests that equitable subordination is anything different than the 502 cases that are exempt from the stay. And again, the policy of American Way has – not only exists in these cases, it's been lived out. It's been lived out. Our hands have been tied. We've done – like Judge Markell's dissent. I heard the quote earlier about dissents not being law. But this is an appeal from that order, and I would urge you to read that because that's exactly what's happening here. They're taking advantage of the automatic stay. One little correction. They didn't buy back – LCPAI did not buy back all the loans. They had owned three. Two were sold, and they bought back about seven of the ten. There's two or three that Lee Monopoly still owns outright, and there's other loans that were repoed to other participants. But for the most part – and that was one of the most unfair things that happened. There was cases in the SunCal cases that had no automatic stay at all because LCPAI didn't own the loans. They were owned by Lee Monopoly. And then when the repo was unwound, they purposely parked the loans that were repoed in LCPAI so that they could come back while our adversary proceeding was proceeding nicely without them, LCPAI, and they invoked the stay. So, you know, it's exactly the policy that was enunciated in Park in North America. I mean, the system is falling apart here because they're using their stay as a sword, and it doesn't matter whether it's a 502A or B objection or a D objection or a 510C. As long as we are limiting our relief requested to the race, to essentially the claim that they submitted jurisdiction of, then there should be no violation of stay because it's not a claim against the debtor. I understand your argument. Thank you for your time. Well, I thank you. And frankly, I appreciate both arguments, very, very good arguments, very right on point. And these are tough issues, and so therefore, I appreciated your counterpoint even without question because I felt about questioning, but I felt like you would probably be able to better point counterpoint than me trying to question you into the different areas. And so I appreciate very much what you've done here. Thank you very much. This court is now adjourned. All rise. This court is now adjourned.
judges: Brewster, Fletcher B. , Smith N. R.